UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANIKA & ASSOCIATES, INC.,

       Plaintiff/Counter-Defendant,

vs.                                     Case No. 11-12534

HARTFORD CASUALTY INSURANCE             HON. AVERN COHN
COMPANY,

       Defendant/Counter-Plaintiff.

_____/

**MEMORANDUM AND ORDER GRANTING
PLAINTIFF/COUNTER-DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 21)**


**I. INTRODUCTION**

      This is a breach of contract case.  Defendant/Counter-Plaintiff, Hartford Casualty

Insurance Company (Hartford) issued the Plaintiff/Counter-Defendant, Anika & Associates,

Inc. (Anika), an insurance policy covering Anika's commercial property in Dundee,

Michigan.  Anika claims that, on June 6, 2010, a tornado damaged its property.  The

incident resulted in a disagreement concerning the amount of loss.  Anika says that

Hartford breached the policy and Mich. Comp. Laws § 500.2833(1)(m) when it refused to

submit the dispute to an appraisal.  Hartford counterclaimed for declaratory judgment that

the policy was voided by Anika's concealment and misrepresentations regarding the

amount it paid to replace the building's roof and siding.  Anika's first amended complaint

is in three counts:

| Count I: | breach of contract/Unfair Trade Practices Act (UTPA); |
| Count II: | fraudulent misrepresentation; and |
| Count III: | abuse of process. |

After the complaint was filed, the claim was submitted to a panel of appraisers. Now before the Court is Anika's motion for partial summary judgment on count I of the first amended complaint, and on Hartford's affirmative defenses and counterclaim. (Doc. 21). The Court heard oral argument on the motion on April 3, 2013. For the reasons that follow, the motion is GRANTED.

## II. BACKGROUND

### A. The Tornado

Anika owned an industrial building located at 100 Research Parkway, Dundee, Michigan (the building) in Monroe County. (Doc. 26 at 1). The building is divided into two parts: (1) a finished section with business offices, and (2) a larger industrial space. (Doc. 24-6 at 2; Doc. 24-7 at 2). On June 6, 2010, a tornado extensively damaged the building. (Doc. 26 at 2). The tornado damaged the roof, destroyed masonry walls and siding, and severely damaged the interior. (*Id.*).

### B. The Insurance Policy

At the time of the tornado, Hartford was the insurer of the building under a commercial property insurance policy. (*Id.*). The policy provides that, in the event of a physical loss or damage, Hartford has the option to pay either the actual cash value (ACV) of the physically damaged property or the replacement cost value (RCV) of repairing or replacing the physically damaged property. (Doc. 23-8 at 2-3). The policy states as follows:

### 5.    Loss Payment

2

In the event of physical loss or physical damage covered by this policy:

**a.**     At our option we will either:

> **(1)** Pay the value of the physically lost or physically damaged property, as described in paragraph **d.** below;

> **(2)** Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;

> **(3)** Take all or any part of the property at an agreed or appraised value; or

> **(4)** Repair, rebuild or replace the property with other property of like kind and quality.

>                          . . . .

**c.**     We will not pay you more than your financial interest in the Covered Property.

**d.**     We will determine the value of Covered Property as follows:

> **(1)**     At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(7)** below.

> **(a)**     You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have physical loss or physical damage settled on an actual cash basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.

> **(b)**     We will not pay on a replacement cost

3

basis for any physical loss or physical damage:

**(i)** Until the physically lost or physically damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.

. . . .

**(c)** We will not pay more for physical loss or physical damage on a replacement cost basis than the least of:

**(i)** The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and quality and which is used for the same purpose; or

**(ii)** The amount you actually spend that is necessary to repair or replace the physically lost or physically damaged property.

**(2)** If the **Actual Cash Value - Buildings** option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings.  Instead we will determine the value of Buildings at actual cash value.

(Doc. 23-9 at 2-3).

In addition, the policy provides for a 15% reduction in the calculation of the ACV loss for property that was vacant at the time of the loss; the parties agree that Anika's building was vacant at the time of loss.  (Doc. 24-11 at 31; Doc. 21-5 at 24).  Finally, the policy

4

voids coverage if the insured conceals or misrepresents material facts in connection with the claim, or otherwise acts fraudulently. (Doc. 23-9 at 5).

## C. Dispute Over Amount of Loss

Anika timely notified Hartford of the June 6, 2010 loss and made an ACV loss claim. (Doc. 26 at 3). The ACV loss is calculated by taking the replacement cost for like kind and quality materials that existed prior to the loss, and subtracting a depreciation value. To date, Hartford has paid $721,123.63 on the claim as "advances or [for] settlement purposes." (Doc. 21-5 at 73). However, the parties disputed the total amount of loss. Anika, therefore, invoked a provision in the policy, as well as Mich. Comp. Laws § 500.2833(1)(m), and demanded that the claim be submitted to binding appraisal.

The policy's appraisal provision states, in pertinent part:

**2. Appraisal**

If we [Hartford] and you [Anika] disagree on the amount of loss, either may make written demand for an appraisal of the loss. In that event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.    Pay its chosen appraiser; and

b.    Bear the other expenses of the apprisal and umpire equally.

If there is an appraisal, we [Hartford] will still retain our right to deny the claim.

5

(Doc. 23-9 at 2).   The appraisal provision in the policy is modeled after the statutory requirement in Mich. Comp. Laws § 500.2833(1)(m) that requires disputes concerning the amount of loss to be submitted to binding appraisal.

Hartford refused to submit the claim to an appraisal.   The parties continued to disagree over the amount of loss, and Anika continued to reject Hartford's settlement offers.  By May of 2011, Anika had demanded, and Hartford had rejected, an appraisal on four different occasions.  Finally, on May 16, 2011, Anika sent a final settlement offer to Hartford.  (Doc. 21-22 at 2).  Anika offered "a walkaway cash out payment of $1,184,000, contingent on receiving the settlement proceeds on or before May 25, 2011."  (*Id.*).  On May 31, 2011, Hartford rejected the offer.  (Doc. 21-24 at 2).

On June 10, 2011, Anika submitted to Hartford what it described as "final Sworn Statement in Proof(s) of Loss for the Building Claim and for the Business Income Extra Expense claims. . . ." (Doc. 24-8 at 2).  In addition, Anika filed this lawsuit. (Doc. 1).  Three days later, on June 13, 2011, Anika asked Hartford to stipulate to binding appraisal for the fifth time.  (Doc. 21-27 at 2).  Hartford rejected Anika's request and filed an answer to the complaint on July 5, 2011.  (Doc. 3).  In its affirmative defenses, Hartford, for the first time, claimed that Anika voided the policy by misrepresenting and concealing facts in connection with its claims.  Specifically, Hartford says that the roof replacement and siding estimates relied on in support of Anika's sworn statement is a misrepresentation, and that Anika concealed several roofing and siding invoices.  Hartford says that after its representatives visited the building, it learned that Anika replaced the roof with a lower quality roof than was relied on in the sworn statement, and that it still provided Hartford with the higher amount in its calculations.  On these same grounds, Hartford counterclaimed for declaratory

6

2:11-cv-12534-AC-MAR   Doc # 27   Filed 04/10/13   Pg 7 of 21   Pg ID 895

judgment that the policy was voided by Anika's actions.

While the case was pending, the claim was submitted to binding appraisal and the parties stipulated to an appraisal protocol. (Doc. 18). On November 1, 2012, the appraisal panel unanimously found that the ACV of the damages totaled $1,094,218.31 at the time of loss, and that temporary repairs loss totaled $28,229.39. (Doc. 19). After all appropriate deductions, the ACV loss totals $930,085.55. The parties dispute the amount of the outstanding balance owed by Hartford under the appraisal award; Anika claims it is $237,191.23, while Hartford claims it is $232,956.32.[1]

Subsequent to the appraisal, Hartford exercised its right under the policy to deny the claim. The policy states that Hartford retains its right to deny a claim even after it has been appraised.[2]

### III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[1] Anika, for purposes of this motion only, agrees with Hartford's calculation. If the parties cannot reach an agreement as to the balance owed under the appraisal award, they should bring their disagreement to the attention of the Court.

[2] Discovery also revealed that Anika filed for bankruptcy in the Northern District of Mississippi prior to filing this lawsuit. Hartford suggests that the building is subject to the claims of creditors in the bankruptcy court proceeding. However, the bankruptcy court has released the building from the bankruptcy proceedings. (Doc. 24-2). Hartford did not raise this issue at oral argument.

(1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial. <u>Chappell v. City of Cleveland</u>, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." <u>Hawkins v. Anheuser-Busch, Inc.</u>, 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

Anika says it is entitled to summary judgment on count I of the first amended complaint, and that Hartford must pay the balance of the appraisal award, as well as interest under the Unfair Trade Practices Act (UTPA). Under the UTPA, an insurer is required to "pay . . . to its insured . . . 12% interest . . . on claims not paid on a timely basis." Mich. Comp. Laws § 500.2006. "If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum." *Id.* § 500.2006(4). Anika contends that there is no genuine issue of material fact that payment is in fact untimely because it submitted its final statements in support of the claim, at the latest, on June 10, 2010, but still has not been paid the balance of the appraisal award.

Hartford disagrees. Hartford says it is not responsible for the balance of the appraisal award based on the following:

1.      Appraisal was premature;

2.      "Coverage issues" exist. Specifically, Hartford says issues regarding the amount of electrical damage still exist;

8

3.      Anika failed to mitigate its damages.  Hartford says Anika allowed water to accumulate in the building, which led to additional mold damage;

4.      Anika made material misrepresentations and concealed receipts.  Hartford says that Anika misrepresented the amount it paid to replace the building's roof and siding; and

5.      The Policy's provision which states: "We will not pay you more than your financial interest in the Covered Property," limits Anika's claim to the market value of the property, which Hartford says is less than the ACV loss calculated by the appraisers.

The Court rejects Hartford's arguments and agrees with Anika that it is entitled to the balance of the appraisal award, as well as interest under the UTPA.  The reasons follow.

## A. Appraisal Moots Hartford's Arguments

Hartford does not deny that the arbitrators' determination of the ACV of the loss encapsulates (1) the amount of electrical damage; (2) any issues regarding Anika's failure to mitigate damages; and (3) the ACV loss of the roof and siding.  Thus, once the appraisal occurred, it mooted Hartford's arguments.  At oral argument, Hartford agreed that the parties' differences over the cost of repairs, or how much to depreciate certain items, was presented to, and resolved by, the appraisers.  Likewise, there is no question that Hartford's claim that appraisal was premature is moot, considering that there has been an appraisal award.

## B. Merits of Hartford's Affirmative Defenses

Even if the Court concludes that Hartford's affirmative defenses were not mooted by the appraisal award, they are devoid of merit.

## 1. "Coverage Issues" Over Electrical Damage

First, Hartford says that coverage issues exist over the amount of electrical damage

2:11-cv-12534-AC-MAR   Doc # 27   Filed 04/10/13   Pg 10 of 21   Pg ID 898

loss.  In response to Anika's second demand for binding appraisal, Hartford informed Anika's counsel that Hartford wanted to perform "megger" testing, which determines the amount of damage to the building's electrical system.  (Doc. 21-15 at 2).  In late January of 2011, Klein Electric & Lighting Co. (Klein), a contractor retained by Hartford, performed megger testing at the building.  (Doc. 23-10 at 2).  In a report dated January 22, 2011, Klein detailed the damage believed to have occurred as a result of the tornado.  (*Id.* at 2-3).  Both parties agreed to Klein's estimate of the electrical damage caused by the tornado.  (Doc. 24-6 at 6).  On February 28, 2011, Hartford sent Anika a check in the amount of $80,124.68.  (Doc. 21-31 at 2).  The check represented the amount "due for electrical scope of work."  (*Id.*).  This amount was a portion of the overall $721,123.63 that Hartford has, to date, paid on the claim as "advances or [for] settlement purposes."  (Doc. 21-5 at 73).

Hartford fails to explain how, if it retained its own contractor to perform megger testing, and subsequently paid Anika for the "electrical scope of work," there is any question about "coverage issues" relating to the electrical damage loss.  Indeed, there remain no genuine issues of material fact that the electrical damage loss has been properly accounted for.

## 2. Mitigation of Damages

Second, Hartford says Anika failed to mitigate its damages by allowing water to accumulate in the building, which led to mold causing further damage.  The problem, however, aside from the fact that this would have been taken into consideration by the appraisers and reflected in their ACV loss valuation, is that Hartford has not proffered any evidence that shows that the ACV loss was increased due to mold damages.

10

While it is true that, under Michigan law, "[i]t has long been recognized that the law should encourage a potential plaintiff to take reasonable actions to minimize the extent of damages arising from the wrongful breach of a contract," *M & V Barocas v. THC, Inc.*, 216 Mich. App. 447, 449 (1996) (citations omitted), that is not the case here. The burden falls on the defendant to prove that "the plaintiff failed to take reasonable steps in mitigation of [its] damages." *Id.* (citation omitted). Hartford has not met that burden; indeed, it has not even established that a genuine issue of material fact exists.

Hartford relies on the deposition of William Martin, its corporate designee, for its position that Anika failed to mitigate its damages. Martin testified that "[t]he building sat there for . . . a year . . . , and nothing was done to it." (Doc. 21-5 at 77). Martin agreed that "[t]here were some temporary repairs done. . . ." (*Id.*). However, he offered the following hypothetical:

> I'll give this example and it may not be germane to this particular situation. If you have wet drywall and you just let it sit there and you don't cut it out and it gets to be moldy and it causes mold, mitigation would have to be done to the building, that could have been rectified immediately if it was mitigated.

(*Id.* at 78).

In addition, Hartford's general adjustor, Christopher Wilkie, stated in an affidavit that he "observed mold growing in the building" during his inspections. (Doc. 23-2 at 3). Wilkie stated that, "Anika's delay in taking measures to replace the roof and perform HVAC or electrical system repairs or replacement and otherwise dry out the building allowed corrosion to continue and mold to grow inside the building." (*Id.*).

Martin's testimony and Wilkie's affidavit fail to create a genuine issue of material fact

11

on the mitigation of damages issue.  Taking as true Wilkie's statement that mold had accumulated in the building, Hartford fails to proffer any evidence showing that the ACV loss was increased due to mold accumulation in the building.  Wilkie's affidavit does not detail any specific costs that were increased due to mold problems.  In fact, the entire record is devoid of any mention of mold problems in the building.  None of the estimates, either from Hartford's contractors or Anika's contractors, mention any costs associated with mold damage.  Aside from Wilkie's affidavit, Hartford has never mentioned to Anika that any mold issues existed in the building.  Indeed, Anika's contractor met with Hartford's adjustors and worked through mitigation of damages issues, including drying out the portion of the building that contained business offices.  (Doc. 24-7 at 3-4).  Hartford even approved specific mitigation efforts, which Anika undertook.  Thus, Hartford has not proffered any admissible evidence that establishes Anika's claimed failure to mitigate increased the ACV loss of the building.

Further, Hartford fails to point to any policy language or Michigan law that states that an insured's failure to mitigate damages voids the policy altogether.  If Hartford had a valid mitigation claim, which it does not, it would not void the policy *ab initio*.  Rather, Hartford would be entitled to deduct that amount from the total amount owed.  Hartford again concedes that this was taken into consideration by the appraisers.

### 3. Roofing and Siding Concealment/Misrepresentations

Third, Hartford says that Anika concealed material facts relating to the roofing and siding replacement immediately after the loss.  The policy states that coverage is void "in any case of fraud by [Anika]. . . ." (Doc. 23-9 at 5).  Further, the policy states that it is void if Anika intentionally conceals or misrepresents a material fact concerning (1) the policy;

12

(2) the covered property; (3) Anika's interest in the property; or (4) a claim under the policy. (*Id.*).  Consistent with the policy, section 500.2833(1)(c) of Michigan's Insurance Code states, in pertinent part, that a policy "may be void on the basis of misrepresentation, fraud, or concealment."  Mich. Comp. Laws § 500.2833(1)(c).

After the loss, Hartford's general adjustor directed Anika to provide it with all replacement costs, estimates and bills, and quotations from Anika's contractors.  However, Hartford says Anika did not provide it with multiple quotes and estimates that it received from Royal West Roofing (Royal West), a roofing contractor.  Subsequently, in January of 2011, Anika replaced the roof with a 45 mil roof, which is a substantially lower quality roof than the one which existed prior to the tornado, at a cost of $156,990.00.  (Doc. 23-5 at 3). Anika did not provide the roofing bill to Hartford.  In addition, in its final proof of loss submitted on June 10, 2011, Anika listed an ACV loss of $240,321.00 for the roof.  (Doc. 21-25 at 31).  Anika also claimed an ACV loss of $89,517.75 for siding replacement, even though Hartford says Anika's actual siding costs were only $7,400.00.  (*Id.*). Hartford did not learn of these facts until litigation started and Royal West was subpoenaed.  Hartford says this amounts to concealment and misrepresentation that voids the policy.  Hartford is incorrect.

Anika's actions do not void the policy for two reasons.  First, both parties agreed to rely on the estimates provided by Hartford's contractor for the roofing and siding costs. These estimates were agreed to as early as December 12, 2010, when Anika submitted its "Partial Sworn Statement in Proof of Loss."  Hartford's own contractor, Damschroder Construction, LLC, determined that the cost to replace the roof was $320,428.00.  (Doc. 21-11 at 38).  Similarly, Hartford itself estimated, and Anika did not disagree, that siding

replacement totaled $113,027.00. (Doc. 24-13 at 24). After accounting for depreciation, Hartford calculated the ACV loss of the roof to be $240,374.72, and the ACV loss of the siding to be $75,733.50. Thus, Hartford's representation that Anika concealed estimates and receipts– when the parties had agreed to use the estimates of Hartford's own contractors– is disingenuous.

Second, assuming *arguendo* that Anika intentionally concealed invoices, or misrepresented the actual replacement cost of the roof and siding, the concealment/misrepresentations are not material to the claim. Indeed, the actual roofing and siding installed by Anika is irrelevant to its ACV claim. As explained above, an ACV claim requires calculating replacement cost for like quality and kind materials, and subtracting from that value the depreciation amount. Anika did not make a replacement cost value (RCV) claim. Replacement cost coverage "was devised to remedy the shortfall in coverage which results under a property insurance policy compensating the insured for actual cash value alone." *Salesin v. State Farm Fire & Cas. Co.*, 229 Mich. App. 346, 365 (1998) (citation omitted). Because Anika did not seek coverage based on the RCV loss, which is presumably higher than the ACV loss,[3] the actual amount it paid for the roof is not relevant to its claim. It would only become relevant if Anika made a RCV claim. Thus, Hartford's claim does not have any merit and does not create a genuine issue of material fact.

### C. Policy's "Financial Interest" Limiting Provision

Next, Hartford says that, regardless of the ACV loss calculated by the appraisers,

---

[3] Indeed, in the estimates, RCV loss was consistently calculated higher than ACV loss. *See* (Doc. 21-11 at 29; Doc. 21-25 at 33).

14

it is not responsible for more than the market value of the building at the time of the tornado loss. The policy states: "We [Hartford] will not pay you [Anika] more than your financial interest in the Covered Property." Anika's financial interest, Hartford says, limits Anika's claim to the market value of the building at the time of the tornado.[3] Hartford is mistaken.

Hartford misplaces its reliance on *Evanston Insurance Co. v. Cogswell Properties,* LLC, 730 F.Supp.2d 748 (W.D. Mich. 2010), *aff'd* 683 F.3d 684 (6th Cir. 2012). In *Evanston Insurance*, Cogswell purchased twenty interconnected buildings for $70,000.00 in a tax foreclosure sale. *Id.* at 749. Cogswell purchased an insurance policy that provided coverage of $1,000,000.00 for real property and $250,000.00 for business personal property. *Id.* On the day the policy was issued, a portion of the property was destroyed in a fire. *Id.* After the claim was submitted for appraisal, the umpire used two different methods to determine ACV:

> First, using [a] market value-based valuation of the Property, he determined that the value was $1,540,000.00. Second, using [a] replacement cost of $1,534,135.28 for the damaged portion (or loss), reduced by . . . depreciation . . . , the umpire determined the value of the loss to be $736,384.89.

*Id.* at 751.

The court held that the umpire erred by applying two separate valuation methods, one method to determine the ACV of the property and another method to determine the ACV of the loss. *Id.* at 753. This error, the court reasoned, "substantially affected the award" and "produced a result that is both illogical and contrary to the purposes of the

---

[3] The Court notes that, unlike Hartford represented at oral argument, this is purely a legal question, and not a coverage question. *See Evanston Ins. Co. v. Cogswell Properties, LLC*, 730 F. Supp. 2d 748, 756 (W.D. Mich. 2010), *aff'd* 683 F.3d 684 (6th Cir. 2012)*.*

15

broad evidence rule."[4]  *Id.* at 754.

Next, the court determined whether the insurer's liability to Cogswell was limited to the $70,000.00 it paid for the property at the tax foreclosure sale.  *Id.* at 755.  The insurance policy contained a provision that the insurer "will not pay you [the insured] more than *your financial interest* in the Covered Property."  *Id.* at 755 (emphasis in original).  Relying on *Auto-Owners Insurance Co. v. Hansen Housing, Inc.*, 604 N.W.2d 504 (S.D. 2000), the court determined that the insured's financial interest in the property "is the fair market value rather than the purchase price."  *Id.* at 758.

Drawing from the language of *Evanston Insurance*, Hartford argues that Anika's claim is limited to the fair market value of the property at the time of the tornado, which Hartford has calculated at $800,000.00.  *See* (Doc. 23-8 at 4).  Unlike *Evanston Insurance*, however, the policy here is not ambiguous and explicitly addresses how to calculate ACV loss.  Here, the policy requires payment based on replacement cost less depreciation, and the reference to financial interest speaks to whether Anika owns part or the whole property.  If, for example, Anika owned 50% of the building at the time of the tornado, it would be limited to 50% of the total ACV loss.

The Michigan Court of Appeals addressed an identical clause limiting an insurer's liability to the insured's "financial interest in the property" in *J.D.'s Pub & Grub, Inc. v. North Pointe Insurance Co.*, No. 256634, 2006 WL 2271306 (Mich. Ct. App. Aug. 8, 2006).  Because the policy did not define "financial interest," the court of appeals turned to the dictionary definition:

---

[4] Under Michigan law, the purpose of the broad evidence rule "is to allow appraisers to select an appropriate valuation method."  *Evanston Ins. Co.*, 730 F.Supp.2d at 754.

16

> "Financial" is commonly understood to pertain or relate to "money matters; pecuniary."   Random House Webster's Dictionary (2d college ed, 1997).  "Interest" may be understood to pertain to:
>
> . . . . 5. A business, cause, *etc.*, in which a person has a share, concern or responsibility.  6. a legal share, right, or title, as in the ownership of property or in a business undertaking. . . . [*Id.*].

*Id.* at 3-4 (alterations in original).  The court of appeals concluded:

> Contrary to [North American]'s argument, because [J.D's] had an ownership interest in the property, its financial interest in the property was greater than its equity interest and included the value of the property as reflected by the total sale price.  In *Singer v. American States Ins.*, 245 Mich. App. 370, 380 (2001), the Michigan Supreme Court held:
>
> > It is undisputed that [the plaintiff] insured the whole property, not simply the amount that she owed under the land contract.  Therefore, the amount for which defendant is liable depends on each parties' interest in the property, not any amount still owed under the land contract.

*Id.* at *4.

Here, Hartford does not contest Anika's "financial interest," *i.e.* its ownership interest in the building.  Indeed, Anika owned 100% of the building at the time of the tornado.  Hartford's definition of "financial interest"– which seeks to limit Anika's recovery to the market value of the building at the time of the loss– is inconsistent with the court of appeals' definition of financial interest in *J.D.'s Pub and Grub*.  Nor does Hartford's definition of financial interest make sense when read in the context of the policy.  The policy provides explicit instructions on how to calculate ACV loss.  The provision limiting Hartford's liability to Anika's financial interest in the property is not contained in those instructions.

The Court's interpretation of Michigan law is supported by a recent unpublished

17

Michigan Court of Appeals case.  *See Hicks v. Auto Club Grp. Ins. Co.*, No. 295391, 2012 WL 205795 (Mich. Ct. App. Jan. 24, 2012) (On Remand) (per curiam).  In *Hicks*, a fire destroyed Roxanne and Ricky Hicks's home.  *Id.* at *1.  The home was insured by an insurance policy.  *Id.*  The insurer argued that Roxanne was only entitled to her financial interest in the property, *e.g.* one-half of the available insurance proceeds.  *Id.*  The court of appeals disagreed:

> The insurance policy at issue states that defendant will not pay more than "the insurable interest an insured person has in the covered property at the time of loss."  As the trial court correctly found, Roxanne is the only party with an insurable interest in the real property. . . Defendant contends that this Court should deem Ricky and Roxanne to be tenants by the entireties for the real property on the ground that Ricky provided financial consideration for the property and sustained a loss by the destruction of the property.  However, defendant presents no facts of record to indicate that Ricky and Roxanne actually owned the property as tenants by the entireties.  Rather, the record demonstrates that Ricky's name was not on the contract for the purchase of the property.  Given the lack of factual support for defendant's argument and the undisputed fact that Ricky was not a party to the land contract, we conclude that Roxanne retained all of the insurable interest in the real property.   Roxanne is thus entitled to all of the recoverable insurance proceeds under the policy.

*Id.*

    *Hicks* confirms that insurance policies limiting coverage to the insured's financial interest in the property at the time of loss do not limit recovery to the market value of the property at the time of loss.  Instead, such provisions limit the insured's recovery to the legal financial interest the insured has in the property, *i.e.* whether the property is subject to a mortgage, whether the insured owns the whole of the property, etc.  Accordingly, the Court rejects Hartford's argument that Anika's recovery is limited to the market value of the

18

property at the time of the tornado.

## D. Balance of Appraisal Award/UTPA Fees

Having determined that Hartford does not have any valid defenses, there is no genuine issue of material fact that Hartford is liable for the balance of the appraisal award. Likewise, there is no genuine issue of material fact that Hartford has indeed not timely paid on the claims, in violation of the UTPA.

The UTPA states, in pertinent part,

> Sec. 2006. (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

Mich. Comp. Laws § 500.2006.

Under Michigan law, a first-party insured is entitled to payment of penalty interest under the UTPA for claims that are not timely paid, regardless of whether the claim is reasonably in dispute. *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 566 (2007). Thus, "if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance, and benefits are not paid on a timely basis, the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute." *Id.* (citation omitted) (internal quotations omitted).

There can be no dispute that, as of June 10, 2011, Anika submitted its final sworn statements in support of the building loss and the business income loss. Attached by letter

19

to the sworn statements of loss, Anika informed Wilkie as follows:

> Pursuant to your request please find enclosed the final Sworn Statement in Proof(s) of Loss for the Building Claim and for the Business Income Extra Expense claims in connection with the tornado which occurred on or about June 6, 2010.

(Doc. 24-8 at 2). The sworn statements were supplemented with detailed estimates and invoices. As explained above, Hartford's claim that multiple loss categories remained open even after the sworn statements were submitted on June 10 does not persuade. Anika clearly alerted Hartford that its statements were final. Therefore, Hartford knew that Anika would not be making further claims on the building or business income loss. Sixty days have long since passed and Hartford has not paid in full on the claims that are due. As such, Hartford is statutorily required to pay 12% interest on the claim pursuant to Mich. Comp. Laws § 500.2006(1) and (4).[5]

## V. CONCLUSION

For the reasons stated above, Anika's motion for partial summary judgment is granted. Judgment will be entered in favor of Anika on Count I of the first amended complaint, and on Hartford's affirmative defenses and counterclaim. In addition, Anika is entitled to interest under Mich. Comp. Laws § 500.2006. The case proceeds as to counts II (fraudulent misrepresentation) and III (abuse of process) of Anika's first amended complaint.[6]

---

[5] Having paid a substantial portion of the claim as settlement advances, the interest Hartford is required to pay shall be calculated based on the amount of the claim that remains unpaid.

[6] The case manager will set a status conference to:
  1.  Discuss the procedures to be followed to determine the exact amount of the judgment to be entered in plaintiff's favor;

11-12534 Anika & Associates, Inc. v. Hartford Casualty

SO ORDERED.


      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE


Dated:  April 10, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 10, 2013, by electronic and/or ordinary mail.


      S/Sakne Chami
      Case Manager, (313) 234-5160

---

2.     Discuss the procedures to determine the exact amount of interest owed to plaintiff; and

3.     Discuss the procedures to be followed in adjudicating counts II and III.